UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
STANLEY LOMBARDO,

                    Plaintiff,          **MEMORANDUM**

   -against-                       **AND ORDER**

THE TOWN OF HEMPSTEAD,          17-CV-4921 (JMA)(SIL)
ANTHONY SANTINO, and THOMAS
METZGER,

                    Defendants.
---------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Plaintiff Stanley Lombardo ("Plaintiff" or "Lombardo") brings this action against Defendants the Town of Hempstead (the "Town"), Anthony Santino ("Santino"), and Thomas Metzger ("Metzger," together with Santino, the "Individual Defendants," and collectively with the Town, "Defendants"), alleging, *inter alia*, violations of his free speech and equal protection rights under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. *See* Complaint ("Compl."), Docket Entry ("DE") [1]. Presently before the Court, on referral from the Honorable Joan M. Azrack for decision with the consent of the parties, is Defendants' Motion to Dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* DE [19]; *see also* Defendants' Memorandum of Law in Support of its Motion to Dismiss the Complaint for Failure to State a Claim ("Defs.' Mem"), DE [19-1]. Lombardo opposes the motion. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plf.'s Mem."), DE [20]. For the reasons set forth below, the Court grants Defendants' motion,

dismisses the Complaint without prejudice, and affords Plaintiff leave to file an amended complaint.

## I. Background

The following facts are taken from the Complaint and are accepted as true for the purposes of this motion.[1] The Complaint, however, tells a jumbled narrative, and as a result the Court does its best to extract the factual allegations in a cohesive manner.

Lombardo is a longtime resident of the Village of East Rockaway, New York, which is located in the Town of Hempstead. *See* Compl. ¶¶ 1, 6. In addition to residing in the Town, Plaintiff was employed therein as a sanitation laborer beginning in March 1989 until he voluntarily retired on November 10, 2016. *See id.* ¶¶ 10, 19. From 1992 through 2015, Lombardo was regularly promoted as a result of passing multiple civil service exams. *See id.* ¶ 10.

As a Town resident, Plaintiff was involved in local politics, and sat on the East Rockaway Board (the "Board").[2] *See id.* ¶ 11. Because of his political affiliations, beginning in 1991, Lombardo frequently interacted with Santino, who was the

---

[1] As discussed below, the Court must accept the Complaint's factual assertions as true, and therefore declines to consider any contradictions raised in the Affidavits of Santino and Metzger, *see* DE [19], submitted by Defendants in support of their motion. *See Henry Avocado Corp. v. Z.J.D. Brother, LLC*, No. 17-cv-4559, 2017 WL 6501864, at *3 (E.D.N.Y. Dec. 19, 2017) (declining to consider the defendants' counter-narrative of facts raised in affidavits because "[t]he only things [a] Court can consider on a motion to dismiss are the factual allegations of the well-pleaded complaint, and any documents attached to, quoted in, or integral to it").

[2] The Complaint is silent as to the Board's powers and duties as well as how it interacts with the Town's government as a whole.

"political leader" of East Rockaway, as well as a Town Councilman.[3] *See id.* Eventually, Santino became the Town Supervisor, but the Court is unsure when exactly he assumed this role as the Complaint states initially that he began serving in January 2016, and then subsequently that his term commenced around the time when Plaintiff retired in November 2016. *See id.* ¶¶ 8, 19.

In any event, Plaintiff claims that he and Santino clashed over political issues, including Santino's penchant for appointing friends to lucrative jobs regardless of their qualifications. *See id.* ¶ 13. Specifically, Lombardo alleges that in or around 2013-2014 Santino hired Tommy Steinback as a part-time laborer for the Town's Department of Public Works ("DPW") and then "attempted to use his influence" to get Steinback a full-time position. *See id.* ¶ 14. Lombardo claims that Steinback was also friends with Defendant Metzger, who serves as Superintendent of the Town's sanitation department in Merrick and is also a "close political ally" of Santino. *See id.* ¶ 13. Plaintiff does not specify what, if any, authority Santino had over the Town's hiring procedures at the DPW when Steinback was promoted, as the Complaint alleges that Santino became Supervisor in January 2016 at the earliest. In any event, Lombardo recused himself from the vote on Steinback's employment due to reservations over his qualifications and seniority. *See id.* Plaintiff does not contend that he voiced any of his concerns to Santino or the rest of the Board. Nevertheless, Lombardo concludes that Santino thereafter harbored a grudge for "daring to oppose" him. *See id.*

---

[3] It is unclear whether Santino was a Councilman for the Town or just the Village of East Rockaway.

After abstaining from the vote on Steinback's promotion in 2013-2014, Plaintiff alleges that Santino, with the help of Metzger, began retaliating against him with respect to Lombardo's employment and political aspirations. *See id.* ¶¶ 2, 13. Specifically, Plaintiff claims that Santino: (i) prevented him from running for Trustee of the East Rockaway Board in March 2015, by destroying petitions and giving the Village Pride Party's nomination to someone else, despite the Party's endorsement of Lombardo; (ii) requested that Plaintiff be transferred from Senior Supervisor in Merrick to Senior Supervisor at the Oceanside, NY landfill, which, although technically a lateral move, stripped Plaintiff of his supervisory authority and access to various buildings;[4] (iii) denied him overtime pay while granting it to others; (iv) deprived him of an appropriate raise after being promoted to Assistant Superintendent of the Oceanside landfill; and (v) engaged Metzger to harass and mock him and his son, Michael, who also works for the Town. *See id.* ¶¶ 15-18, 21.

Further, during the final eight years of his employment with the Town, Plaintiff cared for a feral cat colony located at the Oceanside landfill. *See id.* ¶ 12. In caring for the cats at his own expense, Lombardo fed the animals and had them spayed or neutered. *See id.* After retiring on November 10, 2016, Lombardo met with Santino in January 2017 to attempt to "broker a peace," and requested to come back to work part-time or on a volunteer basis so that he could continue to care for the cats. *See id.* ¶¶ 19, 20. Santino declined to rehire Plaintiff. *See id.* ¶ 20. Despite no longer being in the Town's employ, Lombardo continued caring for the animals until

---

[4] It is unclear who Santino made this "request" to.

June 2017, at which point he was barred from entering the landfill because the premises are closed to the public. *See id.* ¶ 22.[5]

Based on the above, Plaintiff commenced suit on August 21, 2017. *See* DE [1]. The Complaint purports to state two causes of action pursuant to 42 U.S.C. § 1983 for: (i) violations of the First Amendment and Equal Protection Clause of the United States Constitution; and (ii) retaliation under the First Amendment's right to free assembly. *See id.* ¶¶ 28, 30. On August 3, 2018, Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* DE [19]. On November 2, 2018, Judge Azrack referred the motion to this Court for report and recommendation and subsequently, upon the parties' consent, ordered that this Court instead render a final decision. *See* November 2, 2018 Order Referring Motion; *see also* DEs [24], [25].

## II.     Legal Standard for a Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a pleading must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).

---

[5] The Complaint alleges that at one point the landfill was open to the public but does not explicitly state when it became private. *See id.*

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in Lombardo's Complaint as true and draw all reasonable inferences in his favor. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The Court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference"). Where, as here, the action is brought under Section 1983, the Second Circuit has "repeatedly held [that] complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (collecting cases).

## III. Discussion

Applying the standards outlined above, and for the reasons set forth below, the Court concludes that Plaintiff fails to state any viable claims for constitutional violations. The Court first addresses whether Lombardo has adequately pled Section

1983 liability on behalf of the Town and the Individual Defendants, and subsequently assesses the merits of Plaintiff's underlying claims.

### A.  Defendants' Liability Under Section 1983

Before turning to the substance of Lombardo's contentions, the Court considers whether the Complaint adequately alleges that Defendants could be held liable for the conduct complained of.

#### i.  42 U.S.C. § 1983 Generally

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate:  "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983).  The traditional definition of "acting under color of state law" requires that the defendant exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941).

i.       <u>The Town's Liability</u>

The Court first concludes that Lombardo fails to establish municipal liability against the Town. A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where the entity *itself* commits a wrong") (internal citation omitted). To state a claim for municipal liability, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Authority of New York & New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Norton v. Town of Islip*, 97 F. Supp. 3d 241, 264 (E.D.N.Y. 2015), *reconsideration denied*, No. 12-cv-4463, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), *aff'd*, No. 16-cv-490, 2017 WL 440131 (2d Cir. Feb. 1, 2017) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978)); *Lamont v. City of New York*, No. 12-cv-2478, 2014 WL 4829328, at *7 (E.D.N.Y. Sept. 29, 2014)).

Moreover, although Section 1983 does not require application of a heightened pleading standard to allege municipal liability, a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1937 (alteration in original) (internal quotation and citations omitted); *see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993). Thus, Lombardo cannot simply

allege the existence of a policy and/or custom without putting forth "facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (internal citation omitted).

A municipality may also be held liable when its employee is "acting as a final policymaker." *Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 425 (2d Cir. 2004) (internal quotation and citations omitted). Under this theory,

> the official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be responsible under state law for making policy *in that area* of the municipality's business … or must have the power to make official policy *on a particular issue* … or must possess final authority to establish municipal policy *with respect to the action ordered*.

*Id.* (internal brackets, quotations, and citations omitted) (emphasis in original).

Here, the Complaint contains no support for a claim of municipal liability. Indeed the "Facts" section of the pleading contains no allegations concerning any official policy or custom. Instead, in the last paragraph of the Complaint, Plaintiff asserts in entirely conclusory fashion that the Town is liable for the actions of the Individual Defendants because it "intentionally committed, condoned, or [was] deliberately indifferent to the aforementioned violations" by virtue of its "custom or practice of discriminating and/or retaliating against individuals based on their constitutionally-protected forms of speech, expression and association," and through its "fail[ure] to properly investigate and address allegations of discrimination,

retaliation and/or harassment." *See* Compl. ¶ 32. Plaintiff fails to provide any factual substantiation whatsoever for these assertions.

Moreover, Lombardo does not adequately allege that Santino or Metzger were responsible for making any policies affecting his employment. The Complaint states that Santino became the Town Supervisor "[a]round the same time [that Plaintiff retired]," *see id*. ¶ 19, but does not describe what, if any, role Santino played with respect to Town's employment policies or practices during Lombardo's tenure. Moreover, even assuming that Santino's term as Supervisor overlapped with Plaintiff's service, the Complaint merely suggests that Santino made "requests" concerning Lombardo's employment status, *see, e.g.*, *id*. ¶ 17, not that Santino had any actual policymaking duties in this regard. The Complaint similarly lacks any indication that Metzger had any policymaking authority. Accordingly, Plaintiff has failed to plausibly allege municipal liability, and the Complaint is dismissed as against the Town on this basis.

ii.    <u>Individual Defendants' Liability</u>

The Court next concludes that Plaintiff has sufficiently alleged, albeit barely, that Santino and Metzger were acting under color of state law for at least a portion of the substantive claims such that they could be held liable for any constitutional deprivations. Specifically, the Complaint contends that much of the Individual Defendants' conduct occurred within the ambit of their positions as government employees. *See, e.g.*, Compl. ¶¶ 8, 9. Thus, insofar as Santino and Metzger were acting within the scope of their employment, they were clothed with the authority of

state law.  It remains unclear, however, which allegations in the Complaint relate to the Individual Defendants' actions in their official capacities as opposed to conduct as private citizens, and it also is uncertain which claims relate to Santino, Metzger, or both.  In any event, the entirety of Plaintiff's claims fails on the merits, and so the Court need not further discuss the scope of each Defendant's liability at this juncture. *See* Section III(B), *infra*.

B.     <u>**Substantive Claims**</u>

Turning to the merits of Plaintiff's claims, the Court concludes that Lombardo has failed to plausibly allege any viable causes of action.  As set forth above, the Complaint is extremely difficult to follow, and it is unclear which allegations relate to what causes of action.  Thus, the Court attempts to decipher Plaintiff's factual assertions before assessing whether they give rise to liability.  To that end, it appears that Lombardo alleges that the following conduct violates his First Amendment and Equal Protection rights:  (i) general retaliation for speaking out against corruption; (ii) unfairly depriving Lombardo of proper wages; (iii) unconstitutionally barring Plaintiff from entering the Oceanside landfill to care for a feral cat colony; (iv) sabotaging Lombardo's political aspirations; and (v) harassing Plaintiff's son.  As detailed below, none of these actions amounts to a constitutional violation.

i.      <u>Constitutional Framework</u>

a.      *First Amendment Retaliation*[6]

In the Second Circuit, a claim for First Amendment retaliation depends on the factual context from which it stems. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Where, as here, a public employee brings a retaliation claim, the plaintiff must prove that: "(1) [he] engaged in constitutionally protected speech because [he] spoke as [a] citizen[] on a matter of public concern; (2) [he] suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon,* 531 F.3d 138 (2d Cir. 2008) (internal citations omitted). "[T]he causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 318 (E.D.N.Y. 2014) (quoting *Anemone v. Metropolitan Transp. Authority,* 410 F.Supp.2d 255, 267 (S.D.N.Y. 2006)). "In determining 'whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play,' the Supreme Court asks 'whether an intent to convey a *particularized message* was present and whether the *likelihood was great* that the message would be understood by those who viewed it.'" *Toussie v. Cty. of Suffolk*, 806 F. Supp. 2d 558, 577 (E.D.N.Y. 2011) (quoting *Young v. N.Y.C. Transit Auth.,* 903 F.2d 146, 153 (2d

---

[6] Although the Complaint purports to allege a litany of First Amendment violations, *see* Compl. ¶¶ 28, 30, a careful reading of the pleading indicates that Plaintiff's sole First Amendment claim is for retaliation.

Cir. 1990) (quoting *Spence v. Washington,* 418 U.S. 405, 410–11, 94 S. Ct. 2727, 41 L.Ed.2d 842 (1974))) (emphasis in original).

Speech touches upon a matter of public concern when it relates to an area of political, social, or other concern relevant to the community. *See Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1689-90 (1983) (explaining that if the plaintiff's speech did not touch upon a matter of public concern, it was "unnecessary for [the court] to scrutinize the reasons for her discharge"); *see also Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (finding employee's speech not protected because "[i]t did not seek to advance a public purpose"). In the public employee context, though an individual may be motivated by a personal grievance, it does not necessarily foreclose the possibility that he is also speaking out on a matter of public concern. *See Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009). Even when interwoven with personal employment issues, if a public employee is speaking out about and seeking redress for matters that relate to public corruption, such actions have been found to touch upon matters of public concern. *See Golodner v. Berliner*, 770 F.3d 196, 205 (2d Cir. 2014) (recognizing that the "exposure of official misconduct ... is generally of great consequence to the public") (internal quotation and citations omitted).

### b.     *The Equal Protection Clause*

The Equal Protection Clause of the Fourteenth Amendment guarantees the "right to be free from invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting

*Harris v. McRae*, 448 U.S. 297, 322, 100 S. Ct. 2671, 2691 (1980)). "The [Clause] requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001); *accord City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 105 S. Ct. 3249 (1985); *Disabled American Veterans v. United States Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir. 1992). To establish an Equal Protection claim, a plaintiff must prove purposeful discrimination by a government actor that is directed at a suspect class, such as a racial group, or a religion. *Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, 128 F. Supp. 3d 566, 592 (E.D.N.Y. 2015) (internal citation omitted). Alternatively, where, as here, there is no allegation that the plaintiff is a member of a protected class, he may seek redress under a "class-of-one" theory. *See Vassallo v. Lando*, 591 F. Supp. 2d 172, 183 (E.D.N.Y. 2008). A class-of-one Equal Protection claim arises when an individual is "intentionally treated differently from others similarly situated and ... there is no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074 (2000)). "A plaintiff and the persons with whom he compares himself are 'similarly situated' if they are '*prima facie* identical in all relevant respects.'" *Toussie*, 806 F. Supp. 2d at 577 (quoting *Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir. 2005) (quoting *Purze v. Vill. of Winthrop Harbor,* 286 F.3d 452, 455 (7th Cir. 2002), *abrogated on other grounds by Appel,* 531 F.3d 138)). Moreover, a class-of-one plaintiff must show an extremely high degree of similarity between himself and those

to whom he is compared. *Id.* (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

ii. <u>Application to Alleged Conduct</u>

a. *First Amendment Retaliation*

Here, the Complaint appears to allege that the totality of Defendants' improper conduct represents First Amendment retaliation, and the Court therefore addresses this issue generally before turning to the specific allegations. Lombardo asserts that in or around 2013-2014, Santino wanted to hire his friend, Tommy Steinback, to a lucrative full-time position with the Town's Department of Public Works, despite Steinback's lack of qualifications or seniority. *See* Compl. ¶¶ 13-14. Thus, Plaintiff alleges that he recused himself from the Board's vote on the hiring due to his reservations, and that Santino thereafter engaged in a campaign of retaliation against Lombardo for "daring to oppose" him. *Id.* The Court disagrees.

As a threshold matter, Lombardo's actions do not satisfy the communicative elements required to invoke the First Amendment. There is no indication that Plaintiff ever relayed his purported apprehension over Steinback's hiring to Santino or any other member of the Board. Instead, Plaintiff argues that his abstention from the vote alerted Santino to his concerns. *See* Plf.'s Mem. at 12. This position is untenable because it is unreasonable to presume that Lombardo's recusal had the requisite great likelihood of conveying any particularized message against corruption, absent further context. *See Toussie*, 806 F. Supp. 2d at 77.

15

Moreover, assuming *arguendo* that Plaintiff engaged in protected speech, the Complaint fails to adequately allege a causal connection to any adverse employment actions. According to Lombardo, Santino became Supervisor around the same time that Plaintiff retired, *see* Compl. ¶ 19, and contains no information on what Santino's duties were before then. Further, Plaintiff makes little mention of what Metzger's responsibilities were aside from naming his title as the Town's head of sanitation. *See id*. ¶ 9. Indeed, the Complaint generally contains sparse allegations as to Metzger's conduct and suggests that any retaliation he engaged in occurred after Plaintiff retired. *See id*. ¶ 21. Thus, it is unclear whether Santino or Metzger were ever in a position to affect Plaintiff's employment, adversely or otherwise. Moreover, Plaintiff's argument that the basis of the retaliation was speaking out against the Town's deceptive hiring practices under Santino is implausible. *See* Plf.'s Mem. at 8, 12. The Complaint alleges that Santino did not become Supervisor until January 2016 at the earliest, approximately three years *after* the vote on Steinback's promotion. *See* Compl. ¶ 8. Therefore, it is also unclear what role Santino played in Steinback's appointment. Accordingly, the Complaint fails to state a cognizable claim for First Amendment retaliation.

b.      *Wage Allegations*

The Court next addresses the specific allegations levied by Lombardo insofar as they can be construed to assert both Equal Protection and First Amendment violations. Plaintiff contends that he was routinely denied overtime pay while "those close to Santino" received overtime wages without issue. However, there is no further

information regarding the status of employees that were purportedly given overtime compensation as compared to Lombardo.  Thus, the Court cannot ascertain whether those who received overtime were similarly situated to Plaintiff.  Further, Lombardo claims that he was given "less of a raise than he was entitled to" after being promoted to Assistant Superintendent of the Oceanside landfill, while Metzger and non-party Thomas Catchapaglia were given more sizeable raises despite being less senior.  *See* Compl. ¶¶ 17, 18.  With respect to Metzger, the Complaint states that he was the Town's head of sanitation at all relevant times, *see* Compl. ¶ 9, which is presumably a higher-ranking position than Assistant Superintendent of a single landfill.  As to Mr. Catchapaglia, Lombardo fails to provide any further details about his employment that would enable the Court to determine whether he was similarly situated to Plaintiff.  Moreover, the Complaint indicates that Lombardo's promotion occurred before Santino became Supervisor, *see* Compl. ¶ 17, and fails to explain what role Santino or Metzger played in determining his compensation.  Thus, to the extent that Plaintiff argues his compensation was adversely impacted in retaliation to Lombardo's abstention on the Steinback hiring vote, the Complaint again fails to plausibly allege a causal connection.  Accordingly, Plaintiff fails to state a cognizable claim for Equal Protection or First Amendment violations with respect to his wages.

c.     *Feral Cats and Return to Employment*

Lombardo also contends that Defendants deprived him of his First Amendment and Equal Protection rights by prohibiting him from entering the Oceanside landfill, after he retired, to tend to a feral cat colony.  Plaintiff alleges that he cared for these

animals at his own expense in his final years of employment for the Town, but that upon his retirement various Town employees told him that he was barred from entering the premises, which the Complaint concedes is private property. *See* Compl. ¶¶ 12, 22. Lombardo further claims that he requested to return to work on a part-time basis so that he could continue caring for the cats, but that Santino refused to rehire him. *See id.* ¶ 20. The Court concludes that this conduct fails to establish an actionable constitutional claim.

With respect to Equal Protection, Lombardo does not allege that any other former Town employees, or members of the public generally, are permitted to enter the landfill for any reason. Further, Plaintiff does not claim that other retirees were rehired in any capacity. Accordingly, the Complaint fails to establish that Lombardo is being treated differently from others similarly situated to him. Moreover, these allegations fail to state a First Amendment claim because there is no speech or expression involved. Plaintiff contends that the First Amendment is implicated because caring for the feral cat population is of public concern. *See* Plf.'s Mem. at 12-13. Regardless of whether the cats' welfare itself is of public concern, Lombardo did not engage in any communicative conduct such that the First Amendment is implicated. Instead, Lombardo appears to make the untenable leap that his desire to enter private property to help alleviate an issue adversely affecting the community amounts to protected speech. *See id.* The Court disagrees. Accordingly, Plaintiff has not stated a plausible Equal Protection or First Amendment claim in relation to

Defendants' refusal to rehire him or allow him to enter the landfill to care for the feral cat colony.

### d.  Political Retaliation

Plaintiff also argues that the Complaint states a cognizable claim of "political retaliation." *See* Plf.'s Mem. at 8.  The Court again disagrees.  Although there are scattered allegations of malfeasance concerning Santino's influence over local elections, including conspiring to deprive Lombardo of the Village Pride Party's endorsement for Trustee of the East Rockaway Board, *see* Compl. ¶¶ 15, 16, the Complaint fails to coherently describe Santino's role in the electoral process, including whether Santino was acting in a professional or personal capacity (*i.e.*, whether he was acting under color of state law for Section 1983 purposes).  Moreover, there is no "political retaliation" cause of action listed in the Complaint.  Accordingly, Plaintiff has failed to allege an actionable harm in this regard.

### e.  Allegations Regarding Plaintiff's Son

Finally, the Court rejects any contention that Plaintiff's constitutional rights were violated as a result of any harassment that his son Michael faced.  Michael Lombardo is not a party to this lawsuit, and Plaintiff does not have standing to assert claims on his behalf.  *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474, 102 S. Ct. 752, 760 (1982) (A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties") (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975)); *see also S. Ozone Park Civic*

*Ass'n W., Inc. v. Kad of Queens, LLC*, No. 15-cv-2840, 2015 WL 4896059, at *2 (E.D.N.Y. Aug. 17, 2015) ("the law is clear that [plaintiffs generally] have no standing to sue on behalf of … family members.'" (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992)). Accordingly, the Complaint is dismissed insofar as it purports to assert claims on behalf of Michael Lombardo.

## C.   <u>Leave to Amend Complaint</u>

Although Lombardo has not formally moved for leave to amend his Complaint if Defendants' motion is granted, his opposition papers implicitly request such leave. *See* Plf.'s Mem. at 17, n. 2. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "[A] district court may deny leave to amend when … amendment would be futile because the problem with the claim 'is substantive ... [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, 14-cv-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000)). Here, given the Complaint's confusing narrative, the Court cannot conclude with certainty that amendment would be futile. Accordingly, the Court grants Plaintiff leave to file an amended complaint that would satisfy the pleading requirements addressed herein, but cautions Lombardo to ensure that any amended pleading clearly delineates which causes of action apply to each of the Defendants and the various factual allegations.

## IV.    Conclusion

For the reasons set forth above, Defendants' motion is granted, and the Complaint is dismissed without prejudice.  Further, the Court affords Lombardo leave to file an amended complaint within 30 days of the issuance of this Memorandum and Order.

Dated:        Central Islip, New York
              March 26, 2019                    /s/ Steven I. Locke
                                                STEVEN I. LOCKE
                                                United States Magistrate Judge