UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
STANLEY LOMBARDO,

                          Plaintiff,

    -against-

THE TOWN OF HEMPSTEAD,
ANTHONY SANTINO, and THOMAS
METZGER,

                         Defendants.
-------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
17-cv-4921 (JMA)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Plaintiff Stanley Lombardo ("Plaintiff" or "Lombardo") brings this action against Defendants the Town of Hempstead (the "Town"), Anthony Santino ("Santino"), and Thomas Metzger ("Metzger," together with Santino, the "Individual Defendants," and collectively with the Town, "Defendants"), alleging, *inter alia*, violations of his free speech and equal protection rights under the First and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983. *See* Amended Complaint, ("Am. Compl."), Docket Entry ("DE") [29]. Presently before the Court, on referral from the Honorable Joan M. Azrack, is Defendants' Motion to Dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* DE [34]; *see also* Defendants' Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint for Failure to State a Claim ("Def.

Mem."), DE [34-1].[1]  Lombardo opposes the motion.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem."), DE [34-5].  For the reasons set forth below, the Court respectfully recommends granting in part and denying part Defendants' motion, dismissing Lombardo's equal protection claim with prejudice, and permitting his First Amendment cause of action to proceed.

## I.    BACKGROUND

The following facts are taken from the Amended Complaint and are accepted as true for the purposes of this motion.

Lombardo is a resident of the Village of East Rockaway, New York.  *See* Am. Compl. ¶ 4.  He was hired by the Town of Hempstead as a sanitation laborer beginning in March 1989 and worked for the Town until he retired on November 10, 2016.  *See id.* ¶¶ 8, 18.  From 1992 through 2015, Lombardo was regularly promoted as a result of passing multiple civil service exams.  *See id.* ¶ 8.  During the final eight years of his employment, Plaintiff cared for a feral cat colony located at the Town's Oceanside landfill.  *See id.* ¶ 11.  In caring for the cats at his own expense, Lombardo fed the animals and had them spayed or neutered.  *See id.*

Plaintiff was also involved in local politics and served as a member of the Board for the Town of Hempstead.  *See id.* ¶ 13; Pl. Mem. at 2.  Because of his political affiliations, beginning in 1991, Lombardo frequently interacted with Santino, who

---

[1] Although DE [29] is filed as an "Amended Complaint," the document itself is labeled "Complaint."  The Amended Complaint also invokes the right to free assembly.  Plaintiff does not allege any facts however, that would support such a cause of action and none of the parties address it in their motion papers. Accordingly, the Court recommends that the claim be treated as abandoned.  *See, e.g., deVere Grp. GmbH v. Opinion Corp.*, 877 F.Supp.2d 67, 70 n. 3 (E.D.N.Y.2012) (deeming two causes of action abandoned because the "defendants move to dismiss [the plaintiff's] complaint in its entirety" and the plaintiff did not address those causes of action in opposing the defendants' motion to dismiss).

was the "political leader" of the East Rockaway Republican Club, as well as a Town Councilman. *See* Am. Compl. ¶ 9. Although it is unclear, Plaintiff alleges that Santino, either as a leader of local Republican Party or a Town councilman, "was considered a policy maker." *Id*. In any event, Santino became the Town Supervisor in either January 2016 or November 2016. *Compare id*. ¶¶ 6 (Santino became Town Supervisor in January 2016) *with* ¶18 (Lombardo and Santino met in November 2016, around the same time Santino took over as Town Supervisor).

Defendant Metzger was at all relevant times the Superintendent of the Town's Sanitation Department. *Id*. ¶¶ 7, 10. As Superintendent, Metzger "had the ability to set policies for the Sanitation Department and wielded significant influence on . . . hiring and firing" subordinates. *Id*. Metzger also had the ability to unilaterally alter the responsibilities of those under his supervision and he and Santino were close political allies. *Id*. ¶¶ 7, 10, 12.

Plaintiff claims that he and Santino clashed over political issues, including Santino's penchant for appointing friends to lucrative jobs regardless of their qualifications. *See id*. ¶ 12. Specifically, Lombardo alleges that in or around 2013-2014, Santino wanted to hire his friend Tommy Steinback, a part-time laborer for the Town's Department of Public Works, to a full-time position, and then used his influence with the Town for this purpose. *See id*. ¶¶ 12-13. Lombardo claims that Steinback was also friends with Metzger. *See id*. ¶ 12.

Plaintiff alleges that at this time he "spoke out" against the appointment, although he does not say whom he spoke with, what he said, or whether his

3

communications were ever heard by Santino, Metzger, or any other responsible person for the Town. *See id*. Lombardo then recused himself from the vote on Steinback's promotion. *See id*. Lombardo concludes that Santino thereafter harbored a grudge for "daring to oppose" him. *See id*.

After abstaining from the vote, Plaintiff alleges that Santino, with the help of Metzger, began retaliating against him with respect to Lombardo's employment and political aspirations. *See id*. ¶¶ 15-20. Specifically, Plaintiff claims that at some point in 2015 or shortly thereafter: (i) Santino destroyed certain petitions Lombardo was using to run for the Town Board; (ii) Santino had the Town Board switch him (Lombardo) from Senior Supervisor in Merrick to the same title in Oceanside, stripping him of supervisees, equipment and access to certain facilities; (iii) Santino and Metzger worked together to deny Lombardo overtime and a proper raise; (iv) Metzger harassed and "verbally mock[ed]" Plaintiff; (v) Santino and the Town gave Lombardo less of a raise than what he was entitled to; and (vi) in 2017 Santino barred Plaintiff from the Oceanside landfill where he took care of a feral cat colony at his own expense. *See id*.

On November 10, 2016, Plaintiff retired. *Id*. ¶ 18.

Lombardo met with Santino in January 2017 to "broker a peace" and request to come back to work part-time or on a volunteer basis. *See id*. ¶¶ 18-19. Santino declined. *See id*. ¶ 19. Despite no longer being in the Town's employ, Lombardo

continued caring for the Oceanside feral cats until June 2017, at which point he was barred from entering because the premises were closed to the public. *See id.* ¶ 20.[2]

Based on the above, Plaintiff commenced this suit on August 21, 2017. *See* DE [1]. Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on August 3, 2018, which the Court granted in its entirety without prejudice and gave Plaintiff leave to amend. *See* DEs [19], [26]. On April 26, 2019, Plaintiff filed the Amended Complaint. *See* DE [29]. On January 7, 2020, Defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and on March 19, 2020, Judge Azrack referred the motion to this Court for report and recommendation. *See* DE [34], [37].

## II.    LEGAL STANDARD FOR A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a pleading must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in Lombardo's Amended Complaint as true and draw all reasonable

---

[2] The Complaint alleges that at one point the landfill was open to the public, but at some point after Lombardo's retirement it became private. *See id.*

inferences in his favor. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).[3] The Court may consider:

> (1) The factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F.Supp. 2d 422, 425 (S.D.N.Y. 1008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference."). Where, as here, the action is brought under Section 1983, the Second Circuit has "repeatedly held [that] complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (collecting cases).

## III.  DISCUSSION

### A. <u>Defendants' Liability Under Section 1983</u>

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities

---

[3] Because the Court is obligated to take the allegations set forth in the Amended Complaint as true, Defendants' affidavits submitted in support of its opposition, DE [34-3] and [34-4] are not considered.

secured by the Constitution and laws, shall be liable to the
party injured . . . .

42 U.S.C. § 1983. Although Section 1983 itself does not create substantive rights, it
does provide "a procedure for redress for the deprivation of rights established
elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To prevail on a claim
arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of
any rights, privileges, or immunities secured by the Constitution and its laws; (2) by
a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*,
781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983). The traditional
definition of "acting under color of state law" requires that the defendant exercised
power "possessed by virtue of state law and made possible only because the wrongdoer
is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299,
326, 61 S. Ct. 1031, 1043 (1941).

       i.     <u>The Town's Liability</u>

A municipality may not be held liable under Section 1983 on a *respondeat
superior* theory of liability. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-
91, 98 S. Ct. 2018, 2036 (1978); *see also Genovese v. Town of Southampton*, 921
F.Supp. 2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where
the entity *itself* commits a wrong.") (internal citation omitted). To state a claim for
municipal liability, a plaintiff must allege "(1) an official policy or custom that (2)
causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco
v. Port Authority of New York & New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (citing
*Wray v. City of New York*, 490 F.Supp. 3d 241, 264 (E.D.N.Y. 2015), *reconsideration*

7

*denied*, No. 12-cv-4463, 2016 WL 264930 (E.D.N.Y. Jan. 21 2016), *aff'd*, No. 16-cv-490, 2017 WL 440131 (2d Cir. Feb. 1, 2017) (citing *Monell*, 426 U.S. at 690-91, 98 S. Ct. at 2036))); *Lamont v. City of New York*, No. 12-cv-2478, 2014 WL 4829328, at *7 (E.D.N.Y. Sept. 29, 2014).

Although Section 1983 does not require application of a heightened pleading standard to allege municipal liability, a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1937 (alteration in original) (internal quotation and citations omitted); *see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993). Lombardo cannot simply allege the existence of a policy and/or custom without putting forth "facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F.Supp. 2d 573, 576 (S.D.N.Y. 2012) (internal citation omitted).

A municipality may also be held liable when its employee is "acting as a final policymaker." *Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 425 (2d Cir. 2004) (internal quotation and citations omitted). Under this theory,

> The official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be responsible under state law for making policy *in that area* of the municipality's business . . . or must have the power to make official policy *on a particular issue* . . . or must possess final authority to establish municipal policy *with respect to the action ordered*.

*Id*. (internal brackets, quotations, and citations omitted) (emphasis in original).

Applying these standards, the Amended Complaint alleges Town liability sufficient to defeat the motion to dismiss. Specifically, Lombardo alleges that Santino had the Town Board transfer him from his Senior Supervisor position in Merrick to the same title in Oceanside, where he no longer supervised subordinates or was responsible for equipment, and he lost access to certain facilities. Am. Compl. ¶ 16; *see, e.g., Rivers v. New York City Housing Auth.*, 176 F.Supp. 3d 229, 259 (E.D.N.Y. 2016) (citing McCollum v. Reno, No. 95-cv-1237, 1996 WL 294257, at *2 (D.D.C. May 28, 1996) (finding that employee could show an adverse employment action where "[his] supervisory responsibilities were reduced," even without a change in title)); *Barry v. New York City Police Dept.*, No. 01-cv-10627, 2004 WL 758299, at *7 (S.D.N.Y. Apr. 7, 2004). This allegation of direct action by the Town Board is sufficient to allege municipal liability.

Less clear is whether the Individual Defendants were acting as policy makers for much of the conduct alleged. For example, Lombardo claims that Santino unlawfully destroyed certain petitions that he (Lombardo) was using to run for the Town Board. But in so doing, Santino was acting as the leader of the local Republican Club, rather than as a Town official making policy. Similarly, although Plaintiff alleges that Metzger was able to set policies for Sanitation Department generally, and had influence as to hiring and firing and could alter employees' work conditions, there is no allegation that he was a policy maker with respect to any specific areas that impacted Plaintiff directly, such as setting the overtime Lombardo claims he was denied. Nevertheless, because Plaintiff alleges the Town Board's direct involvement

in at least part of the alleged unlawful conduct, the motion to dismiss as to the Town should be denied.

ii.    Individual Defendants' Liability

Plaintiff's Amended Complaint also alleges claims against Santino and Metzger individually.  *See id.* ¶¶ 26, 28, 30 (improperly numbered as ¶ 2).  With respect to the claims against Santino, and as set forth above, Lombardo alleges that Santino used his position as a Town Board member to influence the entire Board to transfer Plaintiff to a less desirable position with a lower level of responsibility, and then he and Metzger coordinated their conduct to deny Plaintiff overtime and a proper raise, all in retaliation for "speaking out" against corruption and abstaining from the vote to promote Steinbeck from part-time to full-time.  This alleged direct involvement by the Individual Defendants is sufficient to state a claim and defeat the motion to dismiss on this basis.[4]

**B. Substantive Claims**

Turning to the merits of Plaintiff's claims, the Court concludes that Lombardo has plausibly alleged a First Amendment retaliation cause of action, but not a claim for an equal protection violation.

i.    First Amendment Claim

---

[4] The Court notes that qualified immunity may shield the Individual Defendants from liability, but Defendants do not argue qualified immunity at this juncture.  *See, e.g., Pearson v. Callahan*, 555 U.S. 223 (2009); *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018) ("Qualified immunity is an affirmative defense on which the defendant has the burden of proof."); *K.M. ex rel. D.G. v. Hyde Park Cent. School Dist.*, 381 F.Supp.2d 343, 362 (S.D.N.Y. 2005) ("Once accused, an individual defendant has the burden of proving" that he was entitled to qualified immunity).

In the Second Circuit, a claim for First Amendment retaliation depends on the factual context from which it stems. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Where, as here, a public employee brings a retaliation claim, the plaintiff must prove that: "(1) [he] engaged in constitutionally protected speech because [he] spoke as [a] citizen[] on a matter of public concern; (2) [he] suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (internal citations omitted). "[T]he causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." *Kohutka v. Town of Hempstead*, 994 F.Supp. 2d 305, 318 (E.D.N.Y. 2014) (quoting *Anemone v. Metropolitan Transp. Authority*, 410 F. Supp. 2d 255, 267 (S.D.N.Y. 2006)). "In determining 'whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play,' the Supreme Court asks 'whether an intent to convey a *particularized message* was present and whether the *likelihood was great* that the message would be understood by those who viewed it.'" *Toussie v. Cty. of Suffolk*, 806 F.Supp. 2d 558, 577 (E.D.N.Y. 2011) (quoting *Young v. N.Y.C. Transit Auth.*, 903 F.2d 146, 153 (2d Cir. 1990) (quoting *Spence v. Washington*, 418 U.S. 405, 410-11, 94 S. Ct. 2727, 2730 (1974))) (emphasis in original).

Speech touches upon a matter of public concern when it relates to an area of political, social, or other concern relevant to the community. *See Connick v. Myers*,

11

461 U.S. 138, 148, 103 S. Ct. 1684, 1689-90 (1983) (explaining that if the plaintiff's speech did not touch upon a matter of public concern, it was "unnecessary for [the court] to scrutinize the reasons for [his] discharge"); *see also Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (finding employee's speech not protected because "[i]t did not seek to advance a public purpose"). In the public employee context, an individual may be motivated by a personal grievance, but it does not necessarily foreclose the possibility that he is also speaking out on a matter of public concern. *See Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009). Even when interwoven with personal employment issues, if a public employee is speaking out about and seeking redress for matters that relate to public corruption, such actions have been found to touch upon matters of public concern. *See Golodner v. Berliner*, 770 F.3d 196, 205 (2d Cir. 2014) (recognizing that the "exposure of official misconduct . . . is generally of great consequence to the public") (internal quotations and citations omitted).

Applying these standards, Plaintiff's First Amendment retaliation claim is sufficient to survive the motion to dismiss. Although Lombardo fails to explain when he "spoke out" in 2013 or 2014, to whom he was speaking, what he said, or whether Santino, Metzger or some other responsible Town official learned what he said, he also alleges that he abstained from a vote on Steinbeck's promotion to full-time employment because of Santino's corruption. Even Defendants concede that this is sufficient to constitute an act of protected speech. *See* Defendants' Reply Memorandum of Law in Support of Its [*sic*] Motion to Dismiss the Amended

Complaint for Failure to State a Claim at 6; *see also Vinci v. Quagliani*, 889 F.Supp. 2d 348, 356 (D. Conn. 2012) (Noting that "casting a political vote" is a matter of public concern).   As a result of this conduct, Plaintiff alleges that beginning in March 2015 Santino got the Town Board to transfer him from his post in Merrick to a less desirable one in Oceanside where he was stripped of his supervisory responsibilities and access.   Am. Compl. ¶ 16.   He was then denied overtime and a proper raise by the Individual Defendants.   *Id*.   These allegations are sufficient to defeat Defendant's motion to dismiss Plaintiff's First Amendment cause of action.

ii.   Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment guarantees the "right to be free from invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322, 100 S. Ct. 2671, 2691 (1980)).   "The [Clause] requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001); *accord City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 105 S. Ct. 3249 (1985); *Disabled American Veterans v. United States Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir. 1992).   To establish an Equal Protection claim, a plaintiff must prove purposeful discrimination by a government actor that is directed at a suspect class, such as a racial group, or a religion. *Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. Of Old Westbury*, 128 F.Supp. 3d 566, 592 (E.D.N.Y. 2015) (internal citation omitted).   Alternatively, where, as here, there is no allegation that the

13

plaintiff is a member of a protected class, he may seek redress under a "class-of-one" theory. *See Vassallo v. Lando*, 591 F.Supp. 2d 172, 183 (E.D.N.Y. 2008). A class-of-one Equal Protection claim arises when an individual is "intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1064 (2000)). "A plaintiff and the persons with whom he compares himself are 'similarly situated' if they are '*prima facie* identical in all relevant respects.'" *Toussie*, 806 F.Supp. 2d at 577 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (quoting *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002), *abrogated on other grounds by Appel*, 531 F.3d 138)). A class-of-one plaintiff must show an extremely high degree of similarity between himself and those to whom he is compared. *Id*. (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

The Amended Complaint establishes no basis for an Equal Protection claim. Plaintiff contends that he was denied overtime pay and more than a nominal raise while two other Town employees, Thomas Catchapaglia and Metzger, were given larger increases. *See* Am. Compl. ¶ 17. There is nothing to suggest however, that either of them were similarly situated to Plaintiff—in fact, the Amended Complaint states that Metzger was the Town's Superintendent of Sanitation at all relevant times and acted as Plaintiff's supervisor. *See id*. ¶ 7. As to Mr. Catchapaglia, Lombardo fails to provide any details about his employment other than to allege that he was less senior than Plaintiff. *See id*. ¶ 17. Accordingly, Lombardo has failed to

14

allege that he was treated differently than any similarly situated individuals and his Equal Protection claim should be dismissed.

### iii.    Failure to file a Notice of Claim

Defendants' final argument is that Plaintiff's claims must be dismissed due to his failure to file a notice of claim under New York State law.  This claim is rejected.  A notice of claim need not be filed in a civil rights case such as this one.  *Felder v. Casey*, 487 U.S. 131, 140-41, 108 S. Ct. 2302, 2307-08 (1988);  *Bordeau v. Metropolitan Transit Auth.*, 6-cv-6781, 2008 WL 4455590, at *1 (E.D.N.Y. 2008) (Noting that the failure to file a notice of claim does not preclude § 1983 claims).

### C. **Leave to Amend Complaint**

Lombardo has not moved for leave to further amend his Amended Complaint in the event Defendants' motion is granted.  Accordingly, the Court recommends that Plaintiff be denied further leave to amend with respect to his equal protection cause of action, especially given that the deficiencies in this claim are the same ones the Court addressed in its prior decision, and which Lombardo failed to correct.  *See* DE [26].

## IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendants' motion be granted in part and denied in part, and that Plaintiff's equal protection claim be dismissed with prejudice.  The motion to dismiss should be denied with respect to Lombardo's First Amendment retaliation claim.

15

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.    Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report.    Failure to file objections within the specified time waives the right to appeal the District Court's order.    *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:       Central Islip, New York
             July 19, 2020                        /s/ Steven I. Locke
                                                  STEVEN I. LOCKE
                                                  United States Magistrate Judge

16